# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ADMINISTRATIVE COMMITTEE OF THE WAL-MART STORES, INC. ASSOCIATES' HEALTH & WELFARE PLAN,**

**Plaintiff,**

**-vs-** **Case No. 6:05-cv-1228-Orl-31KRS**

**DEBBIE MOORADIAN, individually and as executrix for the estate of Shannon MOORADIAN,**

**Defendant.**

---

# ORDER

This matter comes before the Court on the motion for summary judgment filed by the Plaintiff, Administrative Committee of the Wal-Mart Stores, Inc. Associates' Health & Welfare Plan (the "Committee") (Doc. 24). In resolving this motion, the Court has also considered the Response (Doc. 31) to that motion filed by the Defendant, Debbie Mooradian ("Mooradian"), as well as the Reply (Doc. 40) filed by the Committee.

## I. Background

Mooradian's husband, Shannon, was a "covered person" under the Wal-Mart Stores, Inc. Associates' Health and Welfare Plan (the "Plan"), an employee benefit plan covered by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* Shannon Mooradian was injured in an accident in January 2004 and subsequently died. Prior to his death, the Plan paid substantial medical benefits on his behalf.

The Plan contains a provision entitling it to reduction, reimbursement, and subrogation under certain circumstances. In pertinent part, that section provides that the Plan has the right to "recover or subrogate 100 percent of the benefits paid . . . by the Plan for covered persons to the extent of any and all of the following payments: Any judgment, settlement, or payment made or to be made because of an accident or malpractice, including but not limited to other insurance." (Doc. 25-2 at 6). Another provision of the Plan requires that

> covered persons or their representatives, including but not limited to their legal representative and/or beneficiaries . . . cooperate in order to guarantee reimbursement of the Plan from third party benefits. Failure to comply with this request will entitle the Plan to withhold benefits due to covered persons under the Plan document. Covered persons or their representatives cannot do anything to hinder reimbursement of overpayment to the Plan after you have accepted benefits.
>
> These rights apply regardless of whether such payments are designated as payment for, but not limited to pain and suffering, medical benefits, other specified damages, or whether the participant has been made whole (that is, fully compensated for his or her injuries).

(Doc. 25-2 at 6). The Plan's right to reduction, reimbursement, and subrogation applies to any funds recovered from another party by or on behalf of any covered person. (Doc. 25-2 at 6). Finally, the Plan provides that its right to reimbursement applies when the Plan pays medical benefits, and a judgment, payment or settlement is made on behalf of the covered person for whom the medical benefits were paid, and the reimbursement "shall be made at the time the payment is received" by the covered person, his or her attorney, or any other person on behalf of the covered person. (Doc. 25-2 at 6).

Mooradian served as the executrix for her husband's estate. (Doc. 1 at 2). She also recovered $1.56 million in settlement of a claim related to her husband's accident. (Doc. 1 at 2). From this money, the Plan seeks $52,147.53 in reimbursement.

On August 18, 2005, simultaneously with the filing of its verified complaint (Doc. 1), the Committee filed a motion for a preliminary injunction (Doc. 2). In the motion, the Committee sought to impose a constructive trust to prevent Mooradian, both individually and as executrix of her husband's estate, from dissipating at least $52,147.43 of the settlement proceeds. (Doc. 2 at 3). Shortly thereafter, the parties agreed to the entry of a preliminary injunction, which was entered on September 19, 2005. (Doc. 20). Mooradian, both individually and as executrix, was ordered to "preserve the amount of $52,147.43, payment received because of an accident occurring on or about January 3, 2004, involving Shannon Mooradian, said amount being held in an account at PNC Bank, N.A. in account number 6905962289." (Doc. 20 at 1). The injunctive order further provided that Mooradian was not waiving any defenses by consenting to the injunction. (Doc. 20 at 1-2).

## II. Summary Judgment Standard

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and

citation omitted). Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The Court is not, however, required to accept all of the non-movant's factual characterizations and legal arguments. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir 1994).

**III. Analysis**

Mooradian contends that neither the $52,147.53 she agreed to preserve (nor any other sums in her possession) constitute an identifiable res subject to a claim of the Committee. She argues that the account at issue existed prior to the entry of the injunction, was not created specifically for the injunction, and contains funds from various sources. She also argues that her agreement (and this Court's preliminary injunction) to set aside the $52,147.53 did not, itself, establish an identifiable res. However, Mooradian offers nothing to contradict the Committee's evidence that the proceeds of the settlement were deposited in the account at issue and have not yet been dispersed. The points Mooradian raises are not relevant to the determination of whether the $52,147.53 constitutes an identifiable res.

Mooradian also argues that it appears Holmes Regional Medical Center double-billed for its services, causing the Committee to pay twice for the same procedure. Referring to a payout

ledger provided by the Committee (Doc. 31-2 at 8-9), Mooradian notes that "for the same date of service, same procedure code, same ICD description, same provider tax ID, and virtually identical charges, payment of $23,316.08 was paid on 9/8/04, and payment of $24,085.52 was paid on 8/16/04." (Doc. 31-2 at 2). Though Mooradian accurately describes the pertinent ledger entries, she offers no explanation as to how they demonstrate overpayment by the Committee. All but two of the dozens of entries in the payout ledger list the same date of service – presumably the date of her late husband's accident – and many have identical procedure codes, ICD descriptions, provider tax IDs and even amounts. Similarity between docket entries, alone, is not enough to raise a genuine issue of material fact as to double-billing, and Mooradian offers no other evidence.

Mooradian argues that the Committee's recovery is barred by its failure to file a claim against her husband's estate within three months of the publication of the notice to creditors, as required by the statute of limitations in Florida's Probate Code, Florida Statute § 733.702. (Doc. 32 at 3). The Committee does not dispute Mooradian's claim that it failed to file a claim within this window. Rather, the Committee contends that ERISA preempts the statute of limitations.

The express preemption provisions of ERISA are "deliberately expansive, and designed to establish pension plan regulation as exclusively a federal concern." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45-46 (1987). ERISA preemption is not limited to state laws designed specifically to affect employee benefit plans. *Id*. at 46. ERISA provisions "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a). A state law relates to an ERISA plan "if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983). To determine whether such a forbidden connection exists, a court looks to both ERISA's objectives as a guide to the

scope of state law that Congress understood would survive ERISA's enactment as well as to the nature of the state law's effect on ERISA plans. *California Div. of Labor Standards Enforcement v. Dillingham Constr. N.A. Inc.*, 519 U.S. 316, 325 (1997).

The Florida Probate Code does not explicitly refer to ERISA plans. In support of its argument that the Probate Code's statute of limitations is connected to the Plan and is therefore preempted, the Committee points to *Board of Trustees of the Western Conference of Teamsters Pension Trust Fund v. H.F. Johnson, Inc.*, 830 F.2d 1009 (9th Cir. 1987). In *H.F. Johnson*, the court held that the nonclaim statute of Montana's Probate Code "related to" an ERISA plan and was therefore preempted. *Id.* at 1016.. The nonclaim statute at issue was substantially similar to Section 733.702 of the Florida Probate Code, barring claims against the estate that had not been filed within four months of publication of a notice to creditors. *Id.* at 1016. Beyond this point, however, the similarities end.

*H.F. Johnson* was a withdrawal liability action, involving a plan administrator seeking contributions owed by an employer who has pulled out of a multiemployer fund. *Id.* at 1011-1012. The Court noted that Congress had amended ERISA and established a six-year period of limitations (29 U.S.C. § 1451(f)) for withdrawal liability actions. *Id.* at 1016. To the Court, this indicated that Congress "considered the period of limitations applicable to [withdrawal liability] actions essential to enforcement of employer obligations" under ERISA and the nonclaim statute therefore "add[ed] a condition not contemplated by Congress to collection of withdrawal liability." *Id*. Because of this, the nonclaim statute was "related" to the ERISA plan and preempted – not merely because it in some way affected the administrator's right to collect funds, but because it altered the limitation period established by Congress. *Id.*

ERISA does not contain a limitation period applicable to a plan's efforts to secure reimbursement for benefits paid on behalf of a plan participant. Therefore, utilizing the Probate Code's statute of limitations would not run counter to a limitations period set by Congress, as was the case in *H.F. Johnson*. In addition, the Committee offers no evidence to suggest that application of state probate laws would tend to frustrate ERISA's objectives, or that there is any other basis for suggesting that Congress expected state probate laws would not survive enactment of ERISA. *California Div. of Labor Standards Enforcement* at 325.

The question then becomes which state statute of limitations to borrow. The Committee argues for the application of Florida Statute § 95.11 – Florida's five-year limitations period for contract actions – rather than the three-month period set by the Florida Probate Code. In other ERISA cases, the Eleventh Circuit has held that the state statute of limitations for contract actions was the appropriate one to utilize. *See*, *e.g.*, *Harrison v. Digital Health Plan*, 183 F.3d 1235 (11th Cir. 1999) (holding that action alleging wrongful denial of benefits under ERISA was most analogous to state law action on simple contract, warranting borrowing of limitations period for contract action). But in this case the claim against the estate (as opposed to the claim against Mooradian in her individual capacity) is more analogous to a probate action than one on a contract. As such, the Probate Code's three-month limitations period appears to be the more appropriate one to borrow.[1] The Committee has failed to demonstrate that it is entitled to summary judgment on its claim against the estate.

---

[1]In the absence of a pending motion, the Court will not decide whether Mooradian is entitled to summary judgment on this point.

Mooradian also contends that summary judgment is inappropriate as to the claim against her in her individual capacity, because the proceeds of the settlement have not been apportioned between the estate's claim and her own, personal claim. The Committee argues that such apportionment is unnecessary, as the Plan's provisions allow it to reach funds recovered by Mooradian, individually, so long as the recovery was because of the accident. The Committee also points out that the terms of the Plan require Mooradian to cooperate with the Committee's efforts to secure reimbursement. Neither of these arguments is persuasive.

Even assuming that Shannon Mooradian agreed, in the Plan, to allow recovery from accident-related funds recovered by his wife individually, the Committee has not shown how such an agreement would bind Mooradian. Similarly, while the Plan's cooperation requirement likely binds Mooradian in her capacity as executrix, the Plan has not shown that it obligates her to reimburse the Plan out of her own personal funds. In the absence of such a showing, the Committee has not shown that it is entitled to summary judgment on this point. In consideration of the foregoing, it is hereby

**ORDERED AND ADJUDGED** that the motion for summary judgment (Doc. 24) filed by the Plaintiff is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on March 1, 2006.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record
Unrepresented Party