# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ADMINISTRATIVE COMMITTEE OF THE WAL-MART STORES, INC. ASSOCIATES' HEALTH & WELFARE PLAN,**

        **Plaintiff,**

-vs-                                                                                               Case No. 6:05-cv-1228-Orl-31KRS

**DEBBIE MOORADIAN, individually and as executrix for the estate of Shannon Mooradian,**

        **Defendant.**

## ORDER

This matter comes before the Court on the motion for summary judgment (Doc. 49) and accompanying memorandum (Doc. 50) filed by the Defendant, Debbie Mooradian ("Mooradian"), and the response in opposition (Doc. 53) filed by the Plaintiff, the Administrative Committee of the Wal-Mart Stores, Inc. Associates' Health & Welfare Plan (the "Committee").

### I.  Background[1]

Mooradian's husband, Shannon, was a "covered person" under the Wal-Mart Stores, Inc. Associates' Health and Welfare Plan (the "Plan"), an employee benefit plan covered by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq*.

---

[1] Much of this background information is taken from the Court's March 1, 2006 order (Doc. 41) denying a motion for summary judgment filed by the Committee.

Shannon Mooradian was injured in an accident on or about January 3, 2004 and died the next day. Prior to his death, the Plan paid $52,147.43 in medical benefits on his behalf.

Mooradian served as executrix of her husband's estate (the "Estate"). (Doc. 1 at 2). She alleges, and the Committee does not deny, that notice to her husband's creditors pursuant to the Florida Probate Code was first published on August 21, 2004. (Doc. 50 at 2). It is also undisputed that the Committee did not file a claim in the probate proceeding.

The Plan contains a provision entitling it to reduction, reimbursement, and subrogation under certain circumstances. In pertinent part, that section provides that the Plan has the right to "recover or subrogate 100 percent of the benefits paid . . . by the Plan for covered persons to the extent of any and all of the following payments: Any judgment, settlement, or payment made or to be made because of an accident or malpractice, including but not limited to other insurance." (Doc. 25-2 at 6). Another provision of the Plan requires that

> covered persons or their representatives, including but not limited to their legal representative and/or beneficiaries . . . cooperate in order to guarantee reimbursement of the Plan from third party benefits. Failure to comply with this request will entitle the Plan to withhold benefits due to covered persons under the Plan document. Covered persons or their representatives cannot do anything to hinder reimbursement of overpayment to the Plan after you have accepted benefits.
>
> These rights apply regardless of whether such payments are designated as payment for, but not limited to pain and suffering, medical benefits, other specified damages, or whether the participant has been made whole (that is, fully compensated for his or her injuries).

(Doc. 25-2 at 6). The Plan's right to reduction, reimbursement, and subrogation applies to any funds recovered from another party by or on behalf of any covered person. (Doc. 25-2 at 6). Finally, the Plan provides that its right to reimbursement applies when the Plan pays medical benefits, and a judgment, payment or settlement is made on behalf of the covered person for whom

the medical benefits were paid, and the reimbursement "shall be made at the time the payment is received" by the covered person, his or her attorney, or any other person on behalf of the covered person.  (Doc. 25-2 at 6).

Mooradian recovered $1.56 million in settlement of a claim related to her husband's accident.  (Doc. 1 at 2).  From this money, the Committee seeks $52,147.53 in reimbursement. Mooradian seeks summary judgment that the Committee has missed the deadlines under the Florida Probate Code for pursuing this claim.

## II.     Legal Standards

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact.  Fed.R.Civ.P. 56(c).  Which facts are material depends on the substantive law applicable to the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted).  Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial.  *Id.* at 322, 324-25. The party opposing a motion for summary judgment must rely on more than conclusory statements

or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255.   The Court is not, however, required to accept all of the non-movant's factual characterizations and legal arguments.   *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir 1994).

**III.    Analysis**

Mooradian argues that the Florida Probate Code's 90-day limitations period, established by Florida Statute § 733.702, bars any claim against the Estate or against her in her individual capacity.  (Doc. 50 at 3-4).  That statute provides, in pertinent part, that

> no claim or demand against the decedent's estate that arose before the death of the decedent ... is binding on the estate, on the personal representative, or on any beneficiary unless filed in the probate proceeding on or before the later of the date that is 3 months after the time of the first publication of the notice to creditors or, as to any creditor required to be served with a copy of the notice to creditors, 30 days after the date of service on the creditor.

It is undisputed that the Committee did not file any claim in Shannon Mooradian's probate proceeding.  However, the Committee argues that this is not relevant because ERISA preempts the Code's limitations period.  (Doc. 53 at 2-6).

ERISA provisions "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA.  29 U.S.C. § 1144(a).  The express preemption provisions of ERISA are "deliberately expansive, and designed to establish pension plan regulation as exclusively a federal concern."  *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45-

46 (1987). ERISA preemption is not limited to state laws designed specifically to affect employee benefit plans. *Id*. at 46. A state law relates to an ERISA plan "if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983). To determine whether such a forbidden connection exists, a court looks to both ERISA's objectives as a guide to the scope of state law that Congress understood would survive ERISA's enactment as well as to the nature of the state law's effect on ERISA plans. *California Div. of Labor Standards Enforcement v. Dillingham Constr. N.A. Inc.*, 519 U.S. 316, 325 (1997).

In *Egelhoff v. Egelhoff*, 532 U.S. 141 (2001), the Supreme Court held that ERISA preempted a state law that automatically revoked, upon divorce, an ERISA plan participant's designation of a spouse as beneficiary. Relying on this case, the Committee argues that application of state laws like Fla. Stat. § 733.702 "erode the nationally uniform plan administration that Congress intended for ERISA." (Doc. 53 at 4). But the Committee is comparing apples and oranges. At best, the Florida Probate Code's statute of limitations has a minimal effect on administration of an employee benefits plan. It does not regulate payment of premiums to or benefits from a plan. It arises only in those cases where a plan claims to be owed money, and only in a fraction of those cases, where the allegedly liable party is deceased. Significantly, it does not affect the substantive right to such reimbursement – merely the time period in which it must be sought. Certainly, the effect of Fla. Stat. § 733.702 is entirely unlike that of a law, such as the one at issue in *Egelhoff*, that changes a plan's beneficiary.

Thus, Fla. Stat. § 733.702 has little or no effect on most ERISA plans. And the Committee offers no argument that Congress, in enacting ERISA, expected to trump laws such a law. Therefore, the Court concludes that the 90-day limitations period established by Florida Statute

§ 733.702 applies, and the Plan's failure to file a claim in the probate proceeding bars any claim it might have against the Estate or against Mooradian in her capacity as administrator.

Mooradian makes a similar argument in regard to Florida Statute § 733.710, which provides in pertinent part that

> [n]otwithstanding any other provision of the code, 2 years after the death of a person, neither the decedent's estate, the personal representative, if any, nor the beneficiaries shall be liable for any claim or cause of action against the decedent, whether or not letters of administration have been issued, except as provided in this section.

Fla. Stat. § 733.710(1).[2]  The statute further provides that it does not apply to a creditor who has filed a claim within 2 years after the person's death.  Fla. Stat. § 733.710(2).  The Committee has not responded at all to this argument.  As such, Mooradian is also entitled to summary judgment on her contention that the Committee's failure to file a claim within the two-year period established by Florida Statute § 733.710 bars the claims against the Estate and against her in her capacity as administrator.

However, Mooradian is also attempting to claim that the Committee's failure to abide by the requirements of Fla. Stat. § 733.702 and Fla. Stat. § 733.710 bars any claim against her individually, rather than as administrator of the Estate.  (Mooradian has acknowledged that at least some of the $1.56 million was recovered by her in her individual capacity.  (Doc. 32 at 9).)  The language of those statutes simply does not support such a result.  The Committee's claim for

---

[2]Although they appear to be similar, the Florida Supreme Court has held that Fla. Stat. § 733.702 and Fla. Stat. § 733.710 are qualitatively different.  *See May v. Illinois Nat. Ins. Co.*, 771 So.2d 1143, 1150 (Fla. 2000) ("[W]e determine that section 733.702 is a statute of limitations that cannot be waived in the probate proceedings by failure to assert the statute in an objection, while section 733.710 is a jurisdictional statute of nonclaim that is not subject to waiver or extension in the probate proceedings.").

reimbursement against Mooradian, individually, is not subject to the limitations or nonclaim periods of the Code, and Mooradian is not entitled to summary judgment on this point.

In consideration of the foregoing, it is hereby **ORDERED AND ADJUDGED** that the motion for summary judgment (Doc. 49) filed by the Defendant, Debbie Mooradian, is **GRANTED IN PART** and **DENIED IN PART**.  The Committee's claims against Debbie Mooradian in her capacity as executrix of the estate of Shannon Mooradian are **DISMISSED**.  In all other respects, the motion is **DENIED.**

**DONE** and **ORDERED** in Chambers, Orlando, Florida on August 2, 2006.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party