**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ADMINISTRATIVE COMMITTEE OF**
**THE WAL-MART STORES, INC.**
**ASSOCIATES' HEALTH & WELFARE**
**PLAN,**

          **Plaintiff,**

**-vs-**                                  **Case No. 6:05-cv-1228-Orl-31KRS**

**DEBBIE MOORADIAN, individually and as**
**executrix for the estate of Shannon**
**Mooradian,**

          **Defendant.**

## ORDER

This matter comes before the Court on the Motion to Affirm Decision of Administrative Committee, or, in the Alternative, Motion for Summary Judgment (Doc. 47) filed by the Plaintiff, the Administrative Committee of the Wal-Mart Stores, Inc. Associates' Health & Welfare Plan (the "Committee"). In resolving this motion, the Court has also considered the memorandum of law (Doc. 48) accompanying it, as well as the response (Doc. 52) filed by the Defendant, Debbie Mooradian ("Mooradian").

**I.**     **Background**

Mooradian's husband, Shannon, was a "covered person" under the Wal-Mart Stores, Inc. Associates' Health and Welfare Plan (the "Plan"), an employee benefit plan covered by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* Shannon Mooradian was injured in an accident on or about January 3, 2004 and died the next day.

Prior to his death, the Plan paid $52,147.43 in medical benefits on his behalf. Mooradian served as executrix of her husband's estate (the "Estate"). (Doc. 1 at 2). She was also a Wal-Mart employee and a Plan participant at the time of his death. (Doc. 48 at 3).

The Plan contains a provision entitling it to reduction, reimbursement, and subrogation under certain circumstances. In pertinent part, that section provides that the Plan has the right to "recover or subrogate 100 percent of the benefits paid . . . by the Plan for covered persons to the extent of any and all of the following payments: Any judgment, settlement, or payment made or to be made because of an accident or malpractice, including but not limited to other insurance." (Doc. 25-2 at 6).[1] Another provision of the Plan requires that

> covered persons or their representatives, including but not limited to their legal representative and/or beneficiaries . . . cooperate in order to guarantee reimbursement of the Plan from third party benefits. Failure to comply with this request will entitle the Plan to withhold benefits due to covered persons under the Plan document. Covered persons or their representatives cannot do anything to hinder reimbursement of overpayment to the Plan after you have accepted benefits.
>
> These rights apply regardless of whether such payments are designated as payment for, but not limited to pain and suffering, medical benefits, other specified damages, or whether the participant has been made whole (that is, fully compensated for his or her injuries).

(Doc. 25-2 at 6). The Plan's right to reduction, reimbursement, and subrogation applies to any funds recovered from another party by or on behalf of any covered person. (Doc. 25-2 at 6). Finally, the Plan provides that its right to reimbursement applies when the Plan pays medical benefits, and a judgment, payment or settlement is made on behalf of the covered person for whom

---

[1] As discussed below, there is some dispute as to whether the quoted language comes from the Plan itself or simply a summary of the Plan. However, no party has suggested that the quoted language does not accurately describe the terms of the Plan, at least in general terms. The Court includes this information here, as it has in previous orders, to provide background and context.

the medical benefits were paid, and the reimbursement "shall be made at the time the payment is received" by the covered person, his or her attorney, or any other person on behalf of the covered person. (Doc. 25-2 at 6).

Mooradian recovered $1.56 million in settlement of a claim related to her husband's accident. (Doc. 1 at 2). From this money, the Committee seeks $52,147.53 in reimbursement.

## II.     Legal Standards

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

The Court must consider all inferences drawn from the underlying facts in a light most

favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The Court is not, however, required to accept all of the non-movant's factual characterizations and legal arguments. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir 1994).

**III.    Analysis**

Obviously, based on the title of the instant motion, the Committee seeks to have this Court affirm its decision. (Doc. 1 at 2). It is not so clear, however, what that decision was.

Early on, the Committee declares that its decision "to require 100% reimbursement of the $52,147.43 in benefits paid by the Plan on behalf of Shannon Mooradian, which were recovered by Debbie Mooradian," was neither arbitrary nor capricious. (Doc. 48 at 1). As the Committee is arguing that this Court is obligated to apply the arbitrary and capricious standard in assessing the decision (Doc. 48 at 7-8), it would appear that this is the decision upon which the motion is founded. However, at another point in the memorandum, the decision is described as the "determination that Debbie Mooradian is obligated by the terms of the Plan, and that the Plan is entitled to the $52,147.43." (Doc. 48 at 8). Subsequently, the decision is described as the "determination that [the Committee] can reach the $52.147.43 being held by Debbie Mooradian." (Doc. 48 at 10). Though somewhat similar, each of these decisions appear to rely on distinct factual findings and involve interpretation of different provisions of the Plan. Further, it is entirely unclear whether the decisions refer to Mooradian in her individual capacity or in her capacity as executrix of the Estate.

Even if the Court could discern which decision (or decisions) the Committee is asserting, this motion would not provide a sufficient basis for affirming it. In laying out Mooradian's

(alleged) obligations under the Plan, the Committee cites not to the Plan itself but to a "Summary Plan Description" (Doc. 48 at 5). This document, which took effect on January 1, 2005 (Doc. 48 at 5) differs from the Summary Plan Description (Doc. 25 at 5-7) that was cited by the Committee in its previous summary judgment motion, and which had an effective date of January 1, 2004 (Doc. 25 at 5). Even if the Summary Plan Description were entitled to treatment as the operative document in this suit, the fact that the one cited here did not take effect until nearly a year after Shannon Mooradian died is a critical flaw, at least for purposes of this motion.

Moreover, the memo glosses over some of the factual issues in the case. For example, in the memo's facts section, the Committee asserts that "[a]s a Plan participant, Debbie Mooradian accepted benefits under the terms of the Plan." (Doc. 48 at 6). In support of this assertion, the Committee cites to a particular passage (Doc. 48-2 at 3) from an affidavit of the Plan's reimbursement coordinator. But the cited passage provides only that Mooradian was a participant in the Plan – not that she accepted benefits, *as a participant*, under its terms. So far as the Court has been shown, the record is devoid of evidence that Mooradian (as opposed to her husband, or her husband's estate) received benefits under the Plan. As such, her status as a participant in the Plan is irrelevant to her obligation to repay any sums paid out by the Plan.

Whether one characterizes the instant motion as one to affirm the decision of the Committee or to grant it summary judgment, the movant has not demonstrated that it is entitled to prevail.

In consideration of the foregoing, it is hereby **ORDERED AND ADJUDGED** that the Motion to Affirm Decision of Administrative Committee, or, in the Alternative, Motion for Summary Judgment (Doc. 47) is **DENIED.**

**DONE** and **ORDERED** in Chambers, Orlando, Florida on September 28, 2006.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party